This is the case of People v. Bryant-Lamont-Douglas, 4080697. We have for the appellant, James Levin, and for the athlete, Amy Sykes-Johnson. Good afternoon. May it please the Court, my name is James Levin. I represent the defendant, Bryant-Douglas. In this case, Your Honor, the State secured a conviction against Mr. Douglas through the perjured testimony of Willie Hill. Without Hill's testimony, the State would not have been able to link Mr. Douglas to the cocaine that was found in the laundry hamper and the cannabis that was found in the rafters of the garage. Mr. Douglas is asking that his conviction be reversed outright based on reasonable doubt as to the two most serious convictions. And as to all the convictions, Mr. Douglas is asking for a reversal as to the two least serious convictions, reversal and a remand for a new trial. Hill lied about not possessing the cocaine found in his home. The second lie was that Hill lied during his testimony that he was not promised a favorable deal by the State or had the expectation of a favorable deal by the State in exchange for his testimony in trial. As to the lies about the cocaine, Hill testified emphatically during his testimony that he knew nothing about the cocaine found in his house. He did not possess the cocaine. He did not know anything about the cocaine found in the laundry hamper. Yet the State conceded in its closing argument that he may have lied and he may have possessed the cocaine alone. If the State's concession is accepted as true that he may have possessed the cocaine alone and that he may have lied, that in itself poses reasonable doubt as to Mr. Douglas' guilt. If Hill possessed the cocaine alone, then by definition, Douglas didn't possess the cocaine. Was his acknowledgment that he knew about the cocaine or that he possessed it alone? Well, Hill said that he did not possess the cocaine. That he didn't have joint possession with Douglas. He didn't possess the cocaine. Was it the State's acknowledgment? Was it that Hill knew about the cocaine or may be lying or that he alone possessed the cocaine or he may be lying? Well, the State posited alternative scenarios in its closing argument and one of those scenarios, which they said was a distinct possibility in this case, is that Hill alone possessed the cocaine and not Douglas. They said that that was a possibility. Then they went on to two other possibilities. The second possibility was that Hill and Mr. Douglas had joint possession of the cocaine. But even under that second possibility, Hill would have had to have lied because Hill testified that he knew nothing about the cocaine and did not possess it. The State's theory that there was joint possession would mean, if accepted as true, that Hill lied and committed perjury. The third alternative that the State posited is that it was Mr. Douglas' cocaine alone and not Mr. Hill's. But that theory is inconsistent with the physical evidence presented. The cocaine found in the laundry hamper showed Mr. Hill's fingerprint, not Mr. Douglas'. One of the officers in the case, Officer Yardell, signed an affidavit, which is in the record, stating that a confidential informant told him that Hill tried to sell cocaine to him. The charges that were brought in this case, one of the charges brought against Hill, was that he possessed with intent to deliver the very cocaine that Mr. Douglas was charged with. Hill had a history of drug dealing. He was convicted of possession with intent to deliver cocaine in the year 2000. So, there is case law from the Illinois Supreme Court that the testimony of a so-called accomplice witness has to bear an absolute conviction of its truth. The Illinois Supreme Court has repeated that pronouncement in many cases. The Illinois Supreme Court has held that with respect to accomplice testimony, that the testimony must bear an absolute conviction of its truth to sustain the conviction under the reasonable doubt standard. And I cited a few cases to support that proposition. McLaurin, people v. McLaurin. People v. Newell, where the Illinois Supreme Court actually reversed the conviction based on the weaknesses in accomplice testimony. And there is one more case that I cited in the Ash, people v. Ash, where the Illinois Supreme Court reversed the conviction based on the unbelievability of accomplice testimony. The present case is much stronger than Newell and Ash, because in this case, we don't just have inconsistencies. We have Willie Hill, who actually lied. Now, I would respectfully submit that the state hasn't taken a position on whether Willie Hill has lied or not. That was one of my primary arguments in my brief. Now, in their issue number one, which was my reasonable doubt argument, the state declined to respond as to issue one. So, in other words, the state saved the response for issue two with respect to my argument that the state's knowing use of perjured testimony is a due process violation and calls for a reversal. They responded not by admitting or denying that Willie Hill lied, but by saying that, undoubtedly, there were significant credibility problems in his testimony. But I think that minimizes the significance of what we have going on here. We have a witness who actually lied about the cocaine. We have a witness who lied about not getting a deal in exchange for his testimony. Well, what evidence do we have before us that a deal was given? Well, we have the fact that Willie Hill did make a deal with the state. It's presented in my brief. And that the cocaine charge was dismissed. And he pled guilty to a reduced charge. He was originally charged with a Class X felony on the cannabis. The state reduced it to a Class I felony. He pleaded guilty and got 14 years. And how much after trial was that, after Douglas' trial? It was one day after the sentence was handed out. One day after the sentence. Which is how much after the trial? How much after the trial? It could have been a month, a month and a half. I'm not sure how... I thought it was like four months. Four months it could have been. I defer to the record on that question. So shouldn't we have something before us, like an affidavit from Hill, an affidavit from his attorney, an affidavit from the state's attorney, that says he was offered this deal before he testified? Before we know that a deal was actually made? Well, the state and the defendant here frame the issue in terms of a reasonable inference. Is there a reasonable inference that a deal was made? Courts have said in many cases that you're not going to have explicit evidence of a deal. You're going to have to find a deal inferred from the record. The state and the defendant frame the issue in the same way. Reasonable inference is the standard. And there are three reasons why I pointed out why there is a reasonable inference here. One is the Hill's defense attorney, Mr. Schmidt, was present during Hill's testimony. Mr. Schmidt had the opportunity, it was discussed at the trial, to exercise Mr. Hill's Fifth Amendment rights. He declined. Mr. Hill admitted that he was dealing cannabis. So in effect, he was admitting that he was guilt on the cannabis charge. There's a reasonable inference here that Schmidt would not have allowed him to admit his drug dealing on the cannabis matter had there not been a discussion or an expectation of leniency. The second reason why... Well, there's a difference between an expectation and a deal, isn't there? Well, an expectation means there are discussions, there are understandings. Let's get down to how the real world actually works. If you're a defense lawyer and you've got a client who's got information that the state wants, and they don't want to put your client on the stand saying, yes, I've been promised X, Y, and Z in terms of the result of my case, it is, quite frankly, normal, if not expected, that the prosecutor would say, if your guy testifies, we'll take care of him later. Wink, wink, nudge, nudge, there's no deal. But everybody understands that there's going to be a beneficial outcome to the person who testifies. Right? Well, so Mr. Hill's lawyer is sitting in the courtroom and lets him testify that he's a purveyor of cannabis. That's just the way things work in the real world. It doesn't have to be a deal. It doesn't have to be a handshake. It's just a common understanding of, yeah, you're after this guy because you think he's the bad one. My guy's less culpable. My guy will help you out. And you take care of him down the road. Right? Well, I mean, that's how it really works in 102 courthouses in the state of Illinois, isn't it? Well, I think the key issue here is whether there was an expectation. How Hill testified is to that. If there was no testimony at all as to whether there were expectations of a deal, it would be a different issue. But Hill testified, I have no expectations of any deal at all. Because none of the terms were discussed, right? Well, we don't know that. I mean, it's a pretty fine point, but he could honestly, I'm not suggesting that Mr. Hill's honest at all times, but he could honestly testify, I haven't been promised any disposition on my case in exchange for my testimony. Well, I think he said more than that. I think he said he had no expectations of getting any deal. He wasn't trying to curtail the state at all. Well, hopes are different than expectations, right? He was hoping for a deal. Well, as the courts have said on many occasions, there's not going to be a clear record of a deal that's promised. They're not going to actually come out and say that. We don't know what happened here. We're arguing based on a reasonable inference, and that's what happens in all these cases. What's your best case for reasonable inference? Well, I cited a number of cases in my brief, and as I pointed out, I think we both framed it the same way, just in terms of the state and defense, reasonable inference. It's just how we apply the principle is where we diverge, and I think that's cited in all the cases that we have on this matter. Well, in People v. Harris, the fact that the charges were dropped five days after the defendant's conviction didn't support a reasonable inference, and then in the Potter case that you cite, this court inferred an agreement existed between the witness and the state when the witness testified at trial because the witness's case was disclosed the day after the trial. The record indicated that the timing of the witness's disposition had been manipulated so she could not be impeached on the stand. The witness's counsel indicated to the court that a few days before the defendant's trial, the witness had an agreement with the state regarding the witness's plea. The state did not deny an agreement was reached, but indicated the plea would take place following the defendant's trial. That's a lot more factually than what we have here. Well, I believe the case Your Honor cited has to do with the timing of three issues here. One is timing, and the issue speaks to timing. The second issue I raise is the fact that Mr. Schmidt did not raise any Fifth Amendment claim when his client said very emphatically during his testimony, yes, I dealt cannabis. Any reasonable defense attorney would not allow his attorney to go into another case and admit that he dealt cannabis, and give a lot of questionable testimony, not just questionable, but perjured testimony about the cocaine. Why would an attorney allow him to give perjured testimony about cocaine and to admit possession of cannabis unless the attorney knew a deal was in the works? So that fact distinguishes it from your case, Your Honor, the cases that you cited, because we have more here than just timing. I believe timing is an important factor here in my case, but not the only one. We obviously have ineffective assistance of counsel claims all the time. I've had defense lawyers put the alleged murderer on the stand in the prelim and allow cross-examination. Do you have a case where they say if the attorney puts him on the stand to confess to the crime, that that's a reasonable inference? There would be no ineffective assistance by Mr. Schmidt here because he had a reasonable trial strategy. His trial strategy is to allow Willie Hill to testify and then get a deal under which Hill has his cocaine charge dismissed. But, Rebecca, Judge Appleton's hope or expectation is different than a deal. Did you try to get an affidavit from Schmidt? Well, I submitted the testimony from the deal that was made by the testimony from Hill. This deal was consummated the very day after the sentencing hearing. Which was, it was actually three months after the trial. But if... Look, this is the third prong. I interrupted you. I apologize. One was the timing, the other was allowing him to testify to a crime without asserting the fifth. You said there's a third prong. Third is that the evidence was absolutely overwhelming. It's not just getting a deal, not getting a better deal than if you had gone to trial. It's the evidence that's so overwhelming. The cocaine is found in Hill's home. It's in his laundry hamper. His print is on it. He's had a prior conviction for dealing cocaine. There are all these factors here and yet the state dismisses the cocaine charge against him. How does the state stand to gain by dismissing the cocaine charge? There's overwhelming evidence of Hill's guilt. The only reason why they would dismiss the cocaine charge by reasonable inference is that there was some kind of deal that was supposed to be made. Otherwise, that would not have been done. In addition, the cannabis was a serious Class X charge. Why would the state reduce that to a Class I? Obviously, the amount of the cannabis involved called for a Class X conviction. And Hill admitted in his testimony that he dealt with cannabis. That's undisputed. Yet why? What rationale would the state have to reduce that to a Class I from an X if they didn't have a deal? And besides that, since Hill had a conviction in 2000, Class X for dealing cocaine, he would have been eligible for an extended term. So as far as the most serious cocaine conviction, we're talking about 12 to 50 years. Hill, had he been convicted, gone to trial, undoubtedly would have been convicted of cocaine and cannabis. He stood to be put in jail for a range of time far in excess of 50 years. In essence, had he gone to trial, it would have been a life sentence. The state had overwhelming evidence that he was guilty. Instead, he gets 14 years on a Class I. I believe these are special circumstances that call for reasonable inference. Together with the timing, now I know it was two or three months after the trial, but had the deal been consummated before the sentencing, it's conceivable that defense counsel could have raised an issue as to it before the sentencing. Once the sentencing occurred, the case is done. So I think the timing, that fact alone is not enough, but that fact, the timing together with the gravity of the situation facing Mr. Hill and Hill's attorney's failure to plead the Fifth, all those factors together create a reasonable inference of some kind of deal. Now, the two elements under my Issue 2, the state's knowing use of perjury, we've established that Hill lied, and the state used that testimony to secure a conviction. Therefore, I would argue that all his convictions are tainted and should be reversed. If Hill told a lie and tried to deceive the jury on an important matter, then all the testimony that he's given becomes suspect, and the integrity of the verdict becomes tainted. All the convictions should be reversed. Now, I did raise an issue as to the sentencing. That's in Issue 4. Unless the court has any further questions, I have nothing else. Thank you, counsel. Thank you. Thank you. May it please the court. Counsel. It seems that to summarize the entire defense here and the point of this appeal is Willie Hill lied. That's the entire point that's been raised so far for the appeal. But respectfully, that misses the mark. The point of this appeal is not to judge whether the jury was correct in finding Hill was more or less credible or defendant was more or less credible. It's whether the facts as presented and the jury being allowed to judge the credibility reached a proper determination based on a rational person and a reasonable person's finding. Starting first with where we left off with Hill's testimony, there is no proof that the state knowingly put on perjured testimony. The state recognized that the testimony that came from Hill, and when you compare it with some of the testimony from the other witnesses, including defendant, there were inconsistencies. But that is not sufficient and solid proof of a lie, and it certainly isn't sufficient proof that the state knowingly put on perjured testimony. Well, if you look at the three prongs that lead to the reasonable inference that the deal was made, the timing, the day after sentencing. Schmidt made no Fifth Amendment claim. He allowed his client to testify that he dealt cocaine, and the evidence was absolutely overwhelming that the cocaine was Hill's. It was in his home. It had his print on it. He had prior drug conviction. And then the state turns around and dismisses a life sentence, class X felony, and reduces it to a class I, even though he confessed to dealing cannabis. Seems to me there's a reasonable inference you can draw. Respectfully, I would disagree with that. The Fifth Amendment, the attorney allowing him to testify to his dealings with cannabis, I think that as Hill stated at the time that he was asked, have you been made any deals, I think his comment was, I haven't been promised anything, and I think that was candid. I think that was honest. I think he was hoping for leniency, and in order to hope for leniency, he had to testify in a way that benefited the state. But that's a far cry from saying that there was, in fact, a deal in place. So that would explain why his attorney allowed him to testify to his role in cannabis. As for his past convictions for dealing cocaine, that was going to be part of the record anyway. The minute he testified, that was going to come out. As for the timing, it was a full three months after he testified at trial. And as the docket entries show that was submitted on the, they were not attached to the record, but they were included in the brief. During the time following his testimony, and prior to the time of the deal, while his charges were still pending, there were continuances at defense counsel's request. There were indications that this was set for final pretrials. All the indications were this was set and going to trial. Again, there was nothing until the day of the plea, three months after, that indicates the state had, in fact, entered into any sort of a deal with Hill for his testimony. Or not for his testimony, but to reduce the current charges that he was facing. As for Hill's guilt being overwhelming on the... Do we have any clue what happened on the day of sentencing? Why suddenly the next day there's a plea? From the transcript? I have not known. Honestly, I don't. I don't have anything. As for evidence of Hill's guilt being overwhelming, again, I would disagree. I agree that Hill's fingerprints were found on the wrapping around the cocaine. Certainly that's not a good indication for his behalf. But I think the evidence also overwhelmingly suggested that the defendant possessed this. And Hill was out for self-preservation. He saw an opportunity to benefit himself. So it doesn't mean he lied. It does not matter that the state knew that Hill was lying? I don't believe so. Or told the jury that he had nothing to do with that cocaine? I don't believe. First of all, I don't believe that's a correct characterization. During closing arguments, first... That is correct. Well, the state's attorney obviously would have known about that. Correct. So the state's attorney knows about the officer filing the affidavit that he's willing to deal with coke. And then the fingerprint. And then the state nevertheless lets him take the stand and say he had nothing to do with the cocaine. It seems to me that the state, in eliciting that testimony, thought at least that he was lying. But my... If you would just concede that for a second. That they thought it. Does it make any difference? That's my question. Does it make any difference with regard to the issues before this court today? If they knowingly did it, I think it would. I didn't say they knew it. I said they thought it. I'm sure they had to consider that. They had to consider it. None of us can stand here and say for certain exactly what the full and complete truth was. That's why we have the jury. That's why we are allowed to present all the facts to the jury. That's why we are encouraging and telling the jury it's your job to go through all these inconsistencies. Well, that's kind of what I'm getting at. It appears that the state, when they elicit testimony from him, he knows nothing about the cocaine. They may not believe it. But maybe the law still allows them. If you want to say that in front of the jury, you can do it and the jury can make their own decision. So my question is, maybe it doesn't make any difference. Or does it make any difference? I think if the state knowingly put on what it knew to be perjured testimony, it makes a difference. I think short of that, it doesn't. At the same time, there was an affidavit. You mentioned the affidavit for the confidential informant in order to get this arrest warrant. In the record, there's also the affidavit for the search warrant on the cell phones. And in there, it's very clear that the officer who was seeking this believed that it was defendant who was the one bringing it in. It says in here that the person who advised them for them to get this search warrant or advised that since defendant has returned to the area, Will, assumingly Willie Hill, had offered to sell cocaine. The informant stated he believed that defendant was utilizing Will to distribute the cocaine. The officer stated he is familiar with defendant, has had information of his involvement with kilogram weight cocaine distribution in the past. I think when you bring all of this in there, again, they were not, by putting in the affidavit that they had received an offer from Hill to sell them cocaine. That is not the equivalent of saying that the state put on perjured testimony. And I think the state's recognition of the inconsistency, again, in Hill's testimony and compared to the others, recognizes that. But the state recognizing that there are inconsistencies, that the jury is charged with resolving, is not the same thing as saying, one, that we conceded reasonable doubt existed. Again, there is no case defendant cites that says when you recognize an inconsistency or you put on alternative theories that you are conceding reasonable doubt. It's not cited because it doesn't exist. You're happy to call me out on that if you've found one. I've sincerely searched. There's no case that says that. It says what? It says that the state presents alternate theories based on the facts that are presented that they have essentially conceded reasonable doubt and you will never be able to convict the defendant of this charge. Isn't there some case law that says the state may not be able to present alternative theories? There is case law that says you cannot present speculation and conjecture. But everything the state presented and everything the state argued was based on facts that were submitted to the jury. Are you familiar with People v. Manling, the 1991 appellate court case? I can't say at the moment I am. The defendant also contends it was error for the prosecutor to suggest two alternative theories as to what transpired prior to Conwell's death on September 27, 1987. The record indicates that the trial judge repeatedly advised the jury that they were to consider only the evidence presented at trial, that the comments made by counsel during opening statements and closing arguments were not evidence, and that such comments should be disregarded when not based upon evidence produced during the trial. Consequently, any prejudice which might have resulted from these remarks was offset by the trial court's admonishments to the jury. Now, does that mean the state cannot argue alternative theories or only cannot if not supported by the evidence? From what you've read, it means if not supported by the record. It would seem from that reading that there was something that was argued that was not supported by the facts or any testimony presented to the jury. In this case, everything that was argued was presented to the jury and was a reasonable inference of the testimony presented to the jury. I think that is a distinguishing point between the facts here and the case there. So, the state would disagree that, one, it knowingly put on purge your testimony, or, two, even that there was a reasonable inference to be made that a plea existed prior to Hill's testimony at the trial. I'm going to ask you the same question I asked Mr. Levin. What did the state acknowledge in the closing argument? That Hill may be telling the truth, that he knew about the trial, that he possessed the cocaine, or maybe lying was not improper, or that he possessed the cocaine alone, or maybe lying was not improper? According to the transcript, this is what the state argued. And, again, closing arguments are not evidence. It mentions that there's cocaine. Let's see. The bedroom belongs to Willie Hill and Marita Douglas, the defendant's sister. In its laundry basket, a laundry hamper. It's green. It's down in with the clothes and the hamper. It's wrapped up in packages, taped up in big lumps. Now, given all that, you would think that, well, it's got to be Willie Hill's. And you would continue to think that, especially in light of the fact that one of his fingerprints was on the packaging of it. And you might well be right. It may well be that it was Willie's cocaine, that it was his alone. That may be right. He may not be telling the truth on that. The other possibility is that it wasn't just his. That, again, like the cannabis from the garage, Willie had it, but he wasn't the only one in constructive possession of it. There was more than one. There was more than one person in constructive possession of it. There was Willie and perhaps Bryant, the defendant. Perhaps it was the same deal with the cannabis. There's a third possibility. The third possibility is that, as Willie told you, he didn't know anything about the cocaine. That could be true. And it goes on through there, but that sets out the three different. And all of those possibilities are reasonable in light of the evidence and the facts that were presented to the jury. It's not a concession, though. Again, it's the state recognizing the problems with their own evidence and doing their best to acknowledge those and not try and fool the jury into thinking they don't see them and then explaining to the jury why they still believe that the case that they have is solid and that they have sufficiently established beyond reasonable doubt for the charges that were made. Does that help with your question on the jury? It does. Thank you. Okay. Again, when we get to the reasonable doubt and whether the state put on, we've already addressed whether the state put on perjury testimony. It did not. The timing of it, the Fifth Amendment rights of it, the evidence of Hill's involvement with the, alleged involvement with the cocaine, did not create a reasonable inference under the facts here. So we get back to the reasonable doubt and, again, we're back to Willie Hill lied. We're back to this bringing credibility into an appeal, which is not what an appeal is for. We are allowed to look and see if the jury's finding was so improbable, palpably wrong, and then go from there. But we're not allowed to just simply say, I have this testimony and I have this testimony. The defendant's testimony doesn't match Willie Hill's, who was the state's main testimony, and, therefore, Hill lied and, therefore, there's no reasonable doubt. There were inconsistencies with Hill's testimony, but there was also corroboration of Hill's testimony by defendant's own sister and by defendant's own brother. The jury was told that the cannabis was supplied to Hill for no charge in exchange for paying the rent on the home Hill shared with defendant's sister. In testifying to the arrangement, Hill clearly admitted his joint possession of the cannabis, but the jury also heard that he was being forced to sell this cannabis. That is actually corroborated by defendant's own brother, who testified that Hill was, in fact, being forced to sell the cannabis. The jury heard that defendant knew of the location of the cannabis, that he had access to it. Defendant's own fiance said, yep, defendant had access to the home, even when Hill was thousands of miles away in Texas. The jury heard that Hill was not only selling for defendant, but that there was a buyer that he wanted to personally sell the cannabis to. That's why he definitely needed the access to Hill's home, even when Hill was not around. So the jury heard evidence of defendant's possession. They clearly heard evidence of his intent to exercise control over it. Not only exercising the control over Hill, but also in his own personal right, again, to come in and take some of it and sell it. And they certainly heard evidence that he had not abandoned any of this cannabis. The fact that Hill doesn't pay for it emphasizes that fact. Who gives somebody 13 pounds of cocaine for nothing in return? He gave it to him to sell on his behalf. He maintained control and he maintained possession of it. All of the problems that defense counsel raises with Hill's testimony, all of these inconsistencies, he presented those to the jury. Again, he was vigorous in his cross-examination of him. The jury was told their responsibility. The jury was told of the concerns with accomplice testimony. The jury was told about joint possession and that it doesn't defeat possession on defendant's part. The jury was admonished properly. They were presented with all of this and they found, beyond a reasonable doubt, that defendant was guilty. The evidence that the men delivered the cocaine to defendant is similarly beyond reasonable doubt. The only evidence is that the men in the truck met with defendant. There's no evidence that he met with Willie Hill. The only evidence is that the money that was found had only defendant's prints on it. The evidence from officer, I believe it was Jason, I apologize, I don't remember his name, Yandel, is that the $30,000 in cash that was found, approximately $30,000, with the defendant's prints on it, would be approximately what you would use to buy 14 pounds of cannabis and 1 kilogram of cocaine. What was found? 0.8 kilogram of cocaine and 13 pounds of cannabis. That matches up. None of the three guys in the truck were charged though, right? No, correct. The information I have, they were not. No. Counsel, what's your position on the motion to treat the notice of appeal as timely file? I have no objection to it. Does it matter whether you have an objection? If we don't have jurisdiction? If we don't have jurisdiction, we do. This court allowed that to, the late notice of appeal, to be filed. We actually, I thought we had indicated we would take it with the case. I apologize, I did not realize that, so my mistake. You may not have been notified, I don't know. That would be, I will definitely check on that and my apologies. Is there no further questions? The state respectfully asks that you affirm the convictions of the defendant and his sentence. Thank you. Thank you. Thank you. Your Honor? Yes, Your Honor. I apologize, I was just trying to find something in the record. This is in response to Your Honor, Justice Appleton's question that you had during my presentation. I wanted to cite more fully from the record. The question is, there's a distinction between a deal and an expectation of leniency. At page 347 of the record, and in my brief at page 31, he'll testify that he didn't receive any promises or expectations of leniency from the state's attorney. So that's a difference. He could have said, I don't have a deal with the state's attorney. But he said, I don't have any expectations of a deal with the state's attorney. So he lied about that. No expectations of a deal. Expectations of leniency. Yes. And that's cited in page 31 of my brief also. What about the motion that's pending? The motion that's taken with the case, Your Honor? Your Honor, I filed that motion because in looking at the record, I thought there's a reasonable possibility that my predecessor, or the clerk, may have filed a notice of appeal one day late. I have just been the appellate attorney. I wasn't the attorney at the trial court level. But from reading the record, what happened is it was very clear in the record that defense counsel and Mr. Douglas wanted to proceed with the appeal. So the trial judge ordered the clerk to prepare a notice of appeal. And the clerk made an error in not preparing the notice of appeal timely. It's been a while since I prepared that motion. But I recall citing a Fourth District case under less favorable facts where this court treated the notice of appeal as timely file. Was it in that case outside the six months? Yes, I'm pretty sure it was. And it's in my motion. I did cite a case on this. I'm pretty sure it was outside the six months. Was it an NRA MS? No, it was a criminal case starting with People v. I just don't recall the name. It's been several months since I prepared the motion. And I would argue that since it was not Mr. Douglas' fault and not his attorney's fault, but the clerk's fault for not having prepared the notice of appeal timely. I understand that. And I agree with what you say. The only problem is that six-month deadline contained in 606C. Well, Your Honor, I rely on that case. Counsel, the two cases you cite in your motion are People v. Sanders and People v. Harris, if either of those were invalidated. Sanders was a Supreme Court case. Okay, Your Honor. I should tell you, to be candid, we have an unpublished case, Rule 23, People v. Harris, that deals with this issue. Justice Appleton was on it, and Justice Turner dissented on that issue. Yes, and I think I cited that case, Your Honor. I cited an unpublished decision, and that probably was the one that I cited. And PLA was denied. Do you know what the impact of the denial of a PLA on Rule 23 is? Well, I would argue that the... You can argue whatever you want, but do you know? Do I know? Well, I don't. I think that would be determinative. The Supreme Court obviously felt that this Court made a correct decision in finding that it had jurisdiction. Either that or it's a puff of wind against an invisible fence. So I'd argue, based on that unpublished decision, the Supreme Court's denial of the PLA, the equitable circumstances, the cases which the unpublished decision relied on, I would argue that the notice of appeal should be treated timely and filed. And a very important fact is it wasn't Mr. Douglas' fault or his attorney's fault. It was the clerk's fault. I was the unfortunate trial court judge that was on Fiat Alice v. Mitchell, where it was clearly the clerk's fault. As with the case recently in Effingham, Mount Vernon, Benton, recent Supreme Court case, they said the Court doesn't have jurisdiction. How did you find this Rule 23 to cite to it? I had a colleague. I asked for some advice. I asked a colleague. I'm the one who brought it to the Court's attention. I think that should be a factor, too, to show Mr. Douglas' good faith. No, I do appreciate it. And that's because I know the Court needs to look at this issue on its own. But I think that is a circumstance that the Court should consider in following its previous decision, that unpublished order, that Mr. Douglas and I as its counsel raised the issue and cited authority to support my position. So I'd ask that the Court follow its previous Rule 23 order and find that it has jurisdiction. And the State hasn't responded. The State has no position. I know that the State can't weigh that issue. On the other hand, I would suggest that that should be considered in Mr. Douglas' here, that the State takes no position on it. And I would also think the State conceded that we did have jurisdiction, at least as far as they were concerned, which is even more favorable for your position. Yes. The State has not cited any cases that go against my position either, cases that the Court has only at its disposal the favorable cases that I cited. Thank you, Counsel. Your time is up. We'll take this matter under advisement and recess for a few minutes.